ISHEE, J.,
 

 for the Court.
 

 ¶ 1. In May 2007, Lisa Mosely was found guilty in the Circuit Court of Tippah County on two counts of sale of cocaine. She
 
 *1072
 
 received a total sentence of twenty years to be served in the custody of the Mississippi Department of Corrections, with five of those years to be suspended upon good behavior, and five years of post-release supervision. Aggrieved, Mosely appeals her convictions and sentence, asserting that the circuit court erred in (1) denying her motion for a directed verdict based on insufficiency of the evidence, (2) denying her motion for a continuance based on alleged discovery violations, (3) allowing Mac Lowery to testify as a rebuttal witness, and (4) refusing to grant a mistrial for improper comments allegedly made by the State during its closing argument. Finding no error, we affirm the judgment of the circuit court.
 

 STATEMENT OF FACTS
 

 ¶ 2. On March 24, 2006, Mosely sold cocaine in an undercover transaction to a confidential informant, Malcolm Yancy, who was working with law enforcement. That morning, just prior to the transaction, Yancy met with law enforcement officers at a “pre-buy” location, where the officers searched Yancy and his vehicle, discussed the plan, installed video and audio equipment on his clothing to record the transaction, and gave him $140 in cash. The money was to be used by Yancy to pay Mosely $40 for a preexisting drug debt and $100 for crack cocaine.
 

 ¶ 3. Although the quality of the videotape is poor, it shows Yancy arriving at a house and being allowed inside by a female. The recording includes a conversation between the female and Yancy regarding his outstanding debt and his request to “buy a hundred.” After agreeing to the sale, the female left the room and returned with a clear plastic bag that she gave to Yancy. Following the transaction, Yancy stopped twice on his way to the “post-buy” meeting, but he maintains that he did not exit the car or receive any drugs at either stop. He then returned to meet the law enforcement officers at the predetermined post-buy location, where officers again searched Yancy and his vehicle. Yancy showed the drugs he purchased from Mosely to the camera, and Yancy received $100 for his services.
 

 DISCUSSION
 

 I. Whether the circuit court should have granted Mosely’s motion for a directed verdict.
 

 ¶ 4. Mosely claims that the evidence was insufficient to support her conviction, and the circuit court committed reversible error by denying her motion for a directed verdict. “In considering whether the evidence is sufficient to withstand a motion for directed verdict ... the court must determine that a reasonable, fair-minded juror could find that the accused committed the offense charged beyond a reasonable doubt, and that every element of that offense existed, given the evidence presented.”
 
 Watts v. State,
 
 958 So.2d 294, 297(¶10) (Miss.Ct.App.2007). Appellate courts consider the evidence presented, as well as any reasonable inferences arising from other evidence, in the light most favorable to the prosecution.
 
 Smith v. State,
 
 646 So.2d 538, 542 (Miss.1994). The motion for a directed verdict must be overruled if there is evidence sufficient to support a guilty verdict under this standard.
 
 Id.
 

 ¶ 5. In order to support a guilty verdict, the State was required to prove that Mosely knowingly and willfully sold, bartered, transferred, distributed, or dispensed cocaine. Miss.Code Ann. § 41 — 29—139(a)(1) (Rev.2005). The State offered physical evidence, which included video and audio footage, and testimonial evidence from a confidential informant and law enforcement officials that, if deemed true, were
 
 *1073
 
 sufficient to sustain Mosely’s conviction. In addition, the evidence was corroborated by testimony from a crime lab analyst at the Tupelo Crime Lab confirming that they tested the substance the State claimed Yancy had received from Mosely, and it was, in fact, cocaine.
 

 ¶ 6. Mosely complains that the quality of the videotape is poor and questions Yancy’s credibility as a witness. However, it is well established that the jury has the duty of evaluating the credibility of the witnesses and evidence presented at trial when reaching a verdict.
 
 Watts,
 
 958 So.2d at 298(¶12). The jury watched the videotape and was informed of Yaney’s criminal history before deciding how much weight to give each during their deliberations.
 
 See McCoy v. State,
 
 954 So.2d 479, 488-84 (¶¶7-8, 11) (Miss.Ct.App.2007). After reviewing the evidence in the light most favorable to the prosecution, we find that a reasonable jury could have found Mosely was guilty of knowingly and willfully selling or transferring cocaine. Therefore, the evidence is sufficient to sustain Mosely’s conviction, and her motion for a directed verdict was properly denied. This issue is without merit.
 

 II. Whether the circuit court should have granted Mosely’s motion for a continuance.
 

 ¶ 7. Mosely’s second assignment of error is that the circuit court erred in denying her motion for a continuance. She contends that the State did not disclose Yancy’s identity until the day before trial, and this interfered with the defense’s ability to adequately prepare its case. The State, on the other hand, maintains that Mosely and her previous counsel had been aware of Yancy’s identity from the time of Mosely’s arraignment, and his name had been included in the file given to the defense several months before trial. The State does concede, however, that everyone, including itself and Mosely, had thought the informant’s name was “Mike Yancy” and did not know he also went by “Malcolm Roy Yancy.” The two sides clarified the situation on the day before trial, and the defense counsel was given the opportunity to interview Yancy.
 

 ¶ 8. To support her argument, Mosely cites Uniform Rule of Circuit and County Court 9.04, which requires the prosecution to disclose the names, addresses, and testimonies of witnesses to be offered during their case-in-chief. URCCC 9.04(A). It also requires the prosecution to disclose the identities of confidential informants that will be produced at a hearing or trial. URCCC 9.04(B)(2). Failure to do so is addressed in URCCC 9.04(1):
 

 If during the course of trial, prosecution attempts to introduce evidence which has not been timely disclosed to the defense ... and the defense objects to the introduction for that reason, the court shall act as follows:
 

 1. Grant the defense a reasonable opportunity to interview the newly discovered witness ...; and
 

 2. If, after such opportunity, the defense claims unfair surprise or undue prejudice and seeks a continuance or a mistrial, the court shall, in the interest of justice and absent unusual circumstances, exclude the evidence or grant a continuance for a period of time reasonably necessary for the defense to meet the non-disclosed evidence or grant a mistrial. 3. The court shall not be required to grant either a continuance or mistrial for such a discovery violation if the prosecution withdraws its efforts to introduce such evidence.
 

 ¶ 9. A trial court’s decision to deny a motion for continuance will not be reversed “unless it appears to have resulted in manifest injustice.”
 
 Stack v. State,
 
 
 *1074
 
 860 So.2d 687, 691(¶7) (Miss.2003) (citation omitted). Conclusory arguments alone are not sufficient to support a request for additional time.
 
 Golden v. State,
 
 736 So.2d 1076, 1077-78(¶6) (Miss.Ct.App.1999). Rather, “[i]t is incumbent on the defendant seeking ... a continuance to show concrete facts that demonstrate the particular prejudice to the defense that will necessarily arise if a delay is not granted.”
 
 Id.
 
 at 1078(¶6).
 

 ¶ 10. In addition, “a violation of Rule 9.04 is considered harmless error unless it affirmatively appears from the entire record that the violation caused a miscarriage of justice.”
 
 Wyatt v. City of Pearl,
 
 876 So.2d 281, 284(¶10) (Miss.2004). Even cases involving clear discovery violations have ruled that such violations are harmless as long as the defendant was not prejudiced.
 
 Gray v. State,
 
 926 So.2d 961, 971(¶25) (Miss.Ct.App.2006) (citing
 
 Jones v. State,
 
 669 So.2d 1383, 1392 (Miss.1995)).
 

 ¶ 11. Mosely has not presented any concrete facts demonstrating how she was prejudiced by the circuit court’s decision to deny her motion for a continuance. Defense counsel had an opportunity to interview Yancy outside the presence of the jury, and both Yancy and the State were forthcoming with information about his past criminal history. The defense claims it needed more time to gather information attacking Yancy’s credibility to be used on cross-examination, as it was the central issue in the case. However, Yancy admitted in front of the jury that he was manipulative, a drug addict, a fraud, a liar, and a thief. In addition, law enforcement officers testified about his criminal history, and the jurors were instructed to be cautious of a paid informant’s testimony. Consequently, we find that Yancy’s credibility and trustworthiness were sufficiently attacked and that it is unlikely a continuance would have resulted in a different verdict. Therefore, the circuit court did not abuse its discretion in denying Mosely’s motion for a continuance. This issue is without merit.
 

 III. Whether the circuit court erred in allowing Mac Lowery to testify.
 

 ¶ 12. Mosely asserts that allowing Mac Lowery to testify during the State’s case-in-chief was a material and prejudicial discovery violation of Rule 9.04. She accuses the State of failing to disclose its intent to call Lowery as a witness or reveal the potential substance of his testimony. The State, on the other hand, argues that the purpose of Lowery’s testimony was to rebut questions concerning discrepancies in the record involving Mosely’s home address and the actual location of the drug transaction that the defense counsel raised while cross-examining a witness.
 

 ¶ 13. “The decision to allow rebuttal evidence or testimony is at the sole discretion of the trial judge.”
 
 Wash v. State,
 
 880 So.2d 1054, 1056(¶4) (Miss.Ct.App.2004). With respect to discovery issues, this Court may reverse a circuit court’s decision only if we find the court abused its discretion.
 
 Wyatt,
 
 876 So.2d at 283(¶6) (Miss.2004) (citing
 
 Byrom v. State,
 
 863 So.2d 836, 849(¶20) (Miss.2003)). Typically, the party who bears the burden of proof must
 
 offer
 
 all substantive evidence during its case-in-chief.
 
 Hosford v. State,
 
 525 So.2d 789, 791 (Miss.1988). When it is unclear whether the evidence in question is properly included in the case-in-chief or as rebuttal, the court should favor rebuttal when:
 

 (1) its reception will not consume so much additional time as to give an undue weight in practical probative force to the evidence so received in rebuttal, and (2) the opposite party would be substantially as well prepared to meet it by surre-
 
 *1075
 
 buttal as if the testimony had been offered in chief, and (3) the opposite party upon request therefor is given the opportunity to reply by surrebuttal.
 

 Jackson v. State,
 
 840 So.2d 739, 741(¶6) (Miss.Ct.App.2003) (citing
 
 Smith,
 
 646 So.2d at 543-44).
 

 ¶ 14. In reviewing the record, we find that all three requirements in this case were satisfied for Lowery’s testimony to be properly classified as rebuttal evidence. The first requirement was met because the circuit court judge limited Lowery’s testimony to the subject of the different addresses; therefore, it did not consume an excessive amount of time. The second requirement was also met because the defense actually raised the issue and was given a full day’s notice by the State that Lowery could possibly be called as a rebuttal witness. Finally, the third requirement was met when the defense requested and was granted the opportunity to cross-examine Lowery. The circuit court judge also noted that Mosely knew Lowery because he was the arresting officer, Lowery’s name was disclosed as being present at the pre-buy and post-buy meetings, and Lowery was named as a witness in voir dire. We agree with the circuit court’s findings that, although Lowery was not technically a rebuttal witness, his testimony was offered in the form of rebuttal. Accordingly, we hold that the circuit court did not abuse its discretion in allowing Lowery to testify. This issue is without merit.
 

 IV. Whether the circuit court erred in denying Mosely’s motion for a mistrial.
 

 ¶ 15. Mosely’s final complaint is that the State allegedly made improper comments during its closing argument that were prejudicial to her case, and the circuit court erred in denying her motion for a mistrial. She claims the argument was a “send a message” argument rather than one based on the facts or evidence presented at trial. Specifically, Mosely’s counsel, David Hill, contends that the comments made by the prosecutor, Kelly Luther, during the following sequence were improper:
 

 
 *1076
 
 ¶ 16. This Court has long recognized that “the trial judge is in the best position to determine if an alleged objectionable remark has a prejudicial effect and whether a mistrial should be granted as a result.”
 
 Johnson v. State,
 
 914 So.2d 270, 273(¶12) (Miss.Ct.App.2005) (citing
 
 Roundtree v. State,
 
 568 So.2d 1173, 1177-78 (Miss.1990)). We will not reverse a circuit court’s decision to deny a motion for a mistrial unless we find the court abused its discretion.
 
 Craft v. State,
 
 970 So.2d 178, 184(¶24) (Miss.Ct.App.2007).
 

 
 *1075
 
 Mr. Luther: I’m going to lay this sheet of paper here, and if any of y’all know of anybody, yourselves or family members or friends, that can do Mike Yancy’s job, I wish and appreciate y’all writing their name and number down.
 

 Mr. Hill: Your honor, I don’t believe that’s [a] proper legal argument, and I object to it.
 

 The Court: Overruled. You may continue.
 

 Mr. Luther: If you know somebody. I know I’ve got an old buddy that works. at the factory. He don’t use cocaine. He’s not a cocaine addict, but I bet he could buy it up like crazy and come up here and submit [himself] to cross-examination and the other things, the fear and the threat and the worries and all those things that go along with being a confidential informant. If you know somebody, write that name down.
 

 Mr. Hill: Same objection. It’s prejudicial and not proper, your Honor.
 

 The Court: All right. The objection is overruled, but it’s noted and you may have a continuing objection. You may continue.
 

 Mr. Hill: And may the record reflect my motion that would go along with that objection?
 

 The Court: Yes, sir.
 

 Mr. Hill: Thank you, your Honor.
 

 [[Image here]]
 

 Mr. Luther: Some people say, [w]hy are we here? Cocaine should be legal. If you legalize the stuff, it wouldn’t be any problem. It’s a victimless crime. I submit to you it’s not a victimless crime.
 

 
 *1076
 
 We’re producing Mike Yancy’s [sic] everyday, and each and every one of you will see the victim in this case all your life.
 

 Mr. Hill: Same objections as before. It’s not proper, highly prejudicial, and [we] ask for a mistrial.
 

 The Court: All right, sir. Overruled. It’s on final argument.
 

 [[Image here]]
 

 Mr. Luther: ... When we get through with this case, I’m going to get in my car and go on back to Pontotoc. Mr. Creekmore is going to go back to New Albany. Mr. Hill and Mr. Minyard are going to go back to Oxford, and y’all are going to be here and y’all are going to be the stopping point. The buck stops with y’all. I submit to you if you believe that she committed this offense beyond a reasonable doubt, then you should vote her guilty; and if you believe she committed this offense beyond a reasonable doubt and you don’t vote her guilty, you will be the ones left to deal with it. Mr. Hill: That’s highly improper and prejudicial and [we] ask for a mistrial, and we certainly object, your Honor. The Court: All right. The objection is noted and overruled. You may continue.
 

 Mr. Luther: For any other reason, if you believe she’s guilty beyond a reasonable doubt, vote to convict her; and if for any reason, you believe she’s guilty beyond a reasonable doubt and you don’t vote guilty, like I say, you will have to live with it. Same goes the other way. If you believe that she’s not guilty, you should vote her not guilty, but I don’t believe you can view that video and hear that tape and see that videotape and have any conclusion, any reasonable doubt whatsoever she isn’t guilty, and you should, in fact, vote to find her guilty.
 

 ¶ 17. Attorneys are granted wide latitude in making then- closing arguments.
 
 Holly v. State,
 
 716 So.2d 979, 988(¶33) (Miss.1998). Prosecutors may include anything that has been presented as evidence, but they must refrain from appealing to the fears of jurors.
 
 Stubbs v. State,
 
 878 So.2d 130, 138(¶22) (Miss.Ct.App.2004). Allegations that a prosecutor’s comment was improper must be evaluated by taking into account the complete context in which the statement was made, including that which was said by the prosecution and defense.
 
 Spicer v. State,
 
 921 So.2d 292, 318(¶53) (Miss.2006). “The inquiry regarding attorney misconduct during closing arguments is ‘whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created.’ ”
 
 Jefferson v. State,
 
 964 So.2d 615, 619(¶14) (Miss.Ct.App.2007) (quoting
 
 Sheppard v. State, 777
 
 So.2d 659, 661(¶7) (Miss.2000)).
 

 ¶ 18. “Send a message” arguments have consistently been condemned by courts.
 
 Spicer,
 
 921 So.2d at 318(¶53). The Mississippi Supreme Court uses a formula consisting of two threshold inquiries and a two-part test to determine if such an argument constitutes reversible error.
 
 *1077
 

 Brown v. State,
 
 986 So.2d 270, 275-76(¶13) (Miss.2008). The threshold inquiries ask: (1) if the defense counsel objected, and (2) if the defense counsel appeared to have invited the remark in light of the surrounding circumstances.
 
 Id.
 
 at 276(¶ 13). The two-part test then requires the court to evaluate: “(1) whether the remarks were improper, and (2) if so, whether the remarks prejudicially affected the accused’s rights.”
 
 Spicer,
 
 921 So.2d at 318 (¶¶ 53, 55).
 

 ¶ 19. Mosely believes the State attempted to appeal to the jury’s sense of responsibility for Tippah County’s major drug problem rather than arguing the facts in evidence or issues presented at trial. The State counters that its comments were in response to the defense counsel’s remarks to the jury that Yancy was a liar and a drug addict, and that he should not be believed.
 

 ¶ 20. Reviewing the argument under the standard set forth by the supreme court, we find that the State’s argument did not constitute reversible error. The first inquiry is satisfied because the defense properly objected. We next ask if it appears that the defense counsel invited the prosecutor’s comments, and “[i]f so ... the issue may be waived.”
 
 Brown,
 
 986 So.2d at 276(¶14). In reading both parties’ closing arguments, we find the basis for the first half of the State’s argument to be in response to the defense counsel’s comments regarding Yancy’s credibility during its closing arguments.
 

 ¶ 21. We then analyze the remainder of the argument under the two-prong test. To qualify as “improper” under the first prong, a statement must “tend to cajole or coerce a jury to reach a verdict for the purpose of meeting public favor and not based on the evidence.”
 
 Spicer,
 
 921 So.2d at 318(¶55). The second prong is met when it is “clear beyond a reasonable doubt that, absent the prosecutor’s inappropriate comments, the jury would have found the defendant guilty.”
 
 Brown,
 
 986 So.2d at 276(¶16).
 

 ¶ 22. In
 
 Shanks v. State,
 
 951 So.2d 575, 580(¶20) (Miss.Ct.App.2006), the prosecutor made the following statement during his closing argument:
 

 [Mjarijuana destroys communities. It destroys families, children. I mean, God knows, maybe some of you or whatever — you know. I hope not, but, you know, we have people that we know that’s been touched by that stuff, whether it’s that or some other drug. That’s why it’s against the law to sell it, whether we like it or not.
 

 In that case, this Court acknowledged that the prosecutor included extraneous considerations in his argument, but we found his statements “largely were focused on the need to consider that drugs were dangerous and possession should be a crime, ... [and][t]he [prosecutor] may have believed some jurors might not have been as concerned about a crime such as this as they should be.”
 
 Id.
 
 at 581(¶21). As a result, we found the prosecutor’s statements were not properly categorized as a “send a message” argument, nor did they interfere with the fairness of the trial.
 
 Id.
 
 at (¶ 22).
 

 ¶ 23. Similarly, in this case, we find that if the challenged statements were removed, the jury would have reached the same verdict based on the evidence presented at trial; therefore, the State’s argument did not create an unjust prejudice against Mosely that influenced the jury’s decision. We also find that the statements in question did not constitute a “send a message” argument. Even if the comments were considered improper, the second prong of the supreme court’s test would not be satisfied because the State’s comments were not so egregious to have
 
 *1078
 
 interfered with the fairness of the trial. Accordingly, this issue is without merit.
 

 ¶ 24. THE JUDGMENT OF THE TIPPAH COUNTY CIRCUIT COURT OF CONVICTION OF COUNTS I AND II, SALE OF COCAINE, AND SENTENCE OF TWENTY YEARS TOTAL, WITH FIFTEEN YEARS TO SERVE, FIVE YEARS SUSPENDED, AND FIVE YEARS OF POST-RELEASE SUPERVISION, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES AND CARLTON, JJ., CONCUR. ROBERTS, J., CONCURS IN RESULT ONLY.